No. __- _____

# UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

**EPOCH EVERLASTING PLAY, LLC and AMAZON.COM SERVICES LLC,**

*Defendants-Petitioners,*

*v.*

**WILLIENE JACKSON-JONES, individually and on behalf of all others similarly situated,**

*Plaintiff-Respondent.*

---

**On Petition for Permission to Appeal from the United States District Court for the Central District of California No. 2:23-cv-02567-ODW The Honorable Otis D. Wright, II**

---

## PETITION FOR PERMISSION TO APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(F)

---

Robert W. Sparkes, III
K&L GATES LLP
One Congress Street, Suite 2900
Boston, MA 02114
Tel: (617) 261-3100
robert.sparkes@klgates.com

*Attorney for Defendant-Petitioner Amazon.com Services LLC*

James F. Speyer
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000
james.speyer@arnoldporter.com

Ian S. Hoffman
William C. Perdue
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001

*Attorneys for Defendant-Petitioner Epoch Everlasting Play, LLC*

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner Epoch Everlasting Play, LLC makes the following corporate disclosure statement:

Epoch Everlasting Play, LLC is a limited liability company registered under the laws of the State of Delaware.  The company is a wholly owned subsidiary of parent company Epoch Co., Ltd.  Epoch Co., Ltd. has no parent company, and no other publicly held company owns 10% or more of Epoch Co., Ltd.'s stock.

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner Amazon.com Services LLC makes the following corporate disclosure statement:

Amazon.com Services LLC is a limited liability company registered under the laws of the State of Delaware. The only member of Amazon.com Services LLC is Amazon.com Sales, Inc. Amazon.com Sales, Inc. is a wholly owned subsidiary of parent company Amazon.com, Inc. Amazon.com, Inc. has no parent company, and no other publicly held company owns 10% or more of Amazon.com, Inc.'s stock.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................1

QUESTION PRESENTED ..........................................................4

STATEMENT OF JURISDICTION...........................................4

BACKGROUND ........................................................................4

      A.    Plaintiff's Complaint ...................................................4

      B.    Defendants' Motion To Dismiss ..................................6

      C.    Plaintiff's Motion for Class Certification ...................8

STANDARD OF REVIEW .......................................................11

ARGUMENT ............................................................................11

I.     Plaintiff Is an Inadequate Representative Because She Faces No Imminent Threat of Future Injury ...................................................11

II.    Common Issues Do Not Predominate Because Plaintiff's Full-Refund Restitution Model Does Not Reliably Measure Her Purported Injury ..........17

RELIEF SOUGHT ...................................................................23

CERTIFICATE OF SERVICE ................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
  2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ...................................................22

*Beal v. Lifetouch, Inc.*,
  2012 WL 3705171 (C.D. Cal. Aug. 27, 2012) ...................................................12

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016) ...................................................................3, 18

*Caldera v. J.M. Smucker Co.*,
  2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ...................................................18

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ............................................................................11

*Chowning v. Kohl's Dep't Stores, Inc.*,
  733 F. App'x 404 (9th Cir. 2018) ................................................................18, 19

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .......................................................................................15, 16

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..........................................................................................12

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*,
  2021 WL 3878654 (9th Cir. Aug. 31, 2021) ...............................................13, 15

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .............................................................................................17

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .............................................................................16

*Ellis v. Costco Wholesale Grp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................................11

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ...........................................................3, 21

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
No. 22-80061, Dkt. 2 (9th Cir. Nov. 8, 2022) .....................................................21

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018) .................................................................13, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..........................................................................13, 14, 15

*Lytle v. Nutramax Lab'ys, Inc.*,
-- F.4th --, 2024 WL 3915361 (9th Cir. Aug. 23, 2024) ....................................17

*Murthy v. Missouri*,
144 S. Ct. 1972 (2024)..................................................................................12, 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..............................................................................12

*Ortega v. Nat. Balance, Inc.*,
300 F.R.D. 422 (C.D. Cal. 2014)........................................................................21

*Renn v. Otay Lakes Brewery, LLC*,
2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ..........................................14, 15, 16

*Rodriguez v. Just Brands USA, Inc.*,
2021 WL 1985031 (C.D. Cal. May 18, 2021)............................................14, 15

*Scheibe v. Performance Enhancing Supplements, LLC*,
2023 WL 3829694 (S.D. Cal. June 5, 2023) ......................................................14

*Shahinian v. Kimberly-Clark Corp.*,
2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) .................................................22

*Swearingen v. Late July Snacks LLC*,
2017 WL 4641896 (N.D. Cal. Oct. 16, 2017) ...................................................16

*Tigbao v. QBE Fin. Inst. Risk Servs., Inc.*,
2014 WL 5033219 (C.D. Cal. Sept. 22, 2014) ..................................................11

*Victor v. R.C. Bigelow, Inc.*,
708 F. App'x 333 (9th Cir. 2017) .......................................................................15

iv

**State Cases**

*Cortez v. Purolator Air Filtration Prod. Co.*,
23 Cal. 4th 163 (2000) ........................................................18

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ...............................................20

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ......................................................18

*Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010) ...........................21

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ...............................17, 18, 19, 22, 23

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ...............................3, 17, 18

**Federal Statutes**

15 U.S.C. § 1261(f)(1)(D) ......................................................6

15 U.S.C. § 1263(a) ..........................................................6, 22

**State Statutes**

Cal. Bus. & Prof. Code § 17203 ...........................................17

Cal. Civ. Code § 3343 ..........................................................19

**Rules**

Fed. R. Civ. P. 23(a)(4) .......................................................11

Fed. R. Civ. P. 23(b)(3) .......................................................17

Fed. R. Civ. P. 23(f) ..........................................................4, 11

**Regulations**

16 C.F.R. § 1500.18(a)(9) ........................................................................6

16 C.F.R. § 1501.1 ..................................................................................7

16 C.F.R. § 1501.2(a) .............................................................................7

16 C.F.R. § 1501.2(b) .............................................................................7

44 Fed. Reg. 34892 (June 15, 1979) .......................................................7

# INTRODUCTION

This Court's immediate review is urgently needed to correct a class-certification order that misapplied bedrock principles of Article III standing and settled limitations on restitution under California's Unfair Competition Law ("UCL").

Defendants are the U.S. distributor and a U.S. seller of a popular line of toys known as "Calico Critters." Calico Critters are "flocked" animal figures with a velvety texture and are sold with detachable clothing and accessories. The packaging warns that the toys may present a choking hazard and are not intended for children under three. Plaintiff purchased Calico Critters for her then-three-plus-year-old granddaughter, who enjoyed them for years.

Plaintiff now claims that Calico Critters are hazardous substances that are illegal to sell (but not to buy or possess) under a Consumer Product Safety Commission ("CPSC") rule banning toys that contain small parts and are intended for children under three. Certain Calico Critters contain small parts, and according to Plaintiff, they are *automatically* deemed intended for children under three because they are flocked. In denying Defendants' motion to dismiss, the district court agreed with Plaintiff's interpretation—even though the rule's plain text sets forth a product-by-product standard, and even though the CPSC has repeatedly indicated that

1

flocked toys generally, and Calico Critters in particular, are *not* automatically deemed intended for children under three.

The district court then certified a class of all California purchasers of certain Calico Critters products. That order is manifestly erroneous for two reasons.

*First*, Plaintiff is an inadequate representative under Rule 23(a)(4) because she lacks Article III standing to seek the requested injunction against Calico Critters sales. At her deposition, Plaintiff testified that she does "not" intend to purchase any more Calico Critters "at this time." She even testified that doing so would be nonsensical. "That would have been repeating the same thing I did before. I would have been buying them to throw them away or to give them away." That testimony forecloses any possibility of future injury justifying injunctive relief.

The district court held otherwise based on purported testimony that Plaintiff "would be interested" in buying Calico Critters if they are modified so that she deems them safe. But that testimony does not actually exist. Even if it did, it would not show that Plaintiff faces an imminent injury. Furthermore, even if Plaintiff had expressed a definitive intent to buy, she *still* faces no risk of future harm because, according to the district court, she would consider buying Calico Critters *only if they are safe—i.e.*, non-harmful.

*Second*, common issues do not predominate under Rule 23(b)(3) because Plaintiff's full-refund restitution model does not reliably measure her purported

2

injury. The only monetary relief the UCL authorizes is "restitution"—*i.e.*, "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). It follows that "a plaintiff cannot be awarded a full refund unless the product she purchased was worthless." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). Here, because her granddaughter happily played with her Calico Critters for years, Plaintiff indisputably received some value. Indeed, Plaintiff received *full* value. She got exactly what she paid for—flocked figures with small parts. Plaintiff's newfound (and mistaken) belief that flocked figures with small parts are categorically banned does not change what she received. Plaintiff is not remotely entitled to a full refund, which would violate fundamental UCL principles.

The district court approved Plaintiff's full-refund model on the ground that Calico Critters "are banned hazardous substances." But the only case the court cited—*In re JUUL Labs, Inc., Marketing Sales Practices. & Products Liability Litigation*, 609 F. Supp. 3d 942 (N.D. Cal. 2022)—contains little analysis and relied on California decisions that do not support awarding a full refund merely because a product is unlawful to sell. Moreover, *JUUL* was the subject of multiple Rule 23(f) petitions, which this Court granted. Leave to appeal should be granted here as well.

## QUESTION PRESENTED

Whether this Court should immediately review the district court's class certification decision holding that the named plaintiff had Article III standing to seek injunctive relief and that full-refund restitution was appropriate under the UCL, even though the named plaintiff (1) testified that she does *not* presently intend to buy the product at issue and (2) benefitted and received value from the products she bought previously.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).  This petition was timely filed within fourteen days after the order granting class certification.  Fed. R. Civ. P. 23(f); ECF 92 ("Order") (Ex. A).

## BACKGROUND

**A.     Plaintiff's Complaint**

Calico Critters is a popular line of flocked animal figures.  "Flocking" is a manufacturing process involving the application of fine particles to adhesive surfaces to produce a velvety texture.  ECF 1-1, ¶ 18.  Calico Critters are sold with detachable clothing and accessories such as bicycles, strollers, and tea sets.  *See id.* ¶¶ 19, 25-26.  The Calico Critters line consists of hundreds of toys.  *See* Order 14-20.  Here is an example:



ECF 1-1, ¶ 25. As this image indicates, the front of the package prominently states in the upper-right corner: "WARNING: CHOKING HAZARD—Small parts/Not for children under 3 years." In the lower-left corner, it states: "3+."

Defendant Epoch Everlasting Play, LLC ("EEP") has distributed Calico Critters since 1987. *Id.* ¶ 13. Calico Critters now are responsible for over half of EEP's revenues. Defendant Amazon.com Services LLC operates the Amazon.com online store, where Calico Critters are sold. *Id.* ¶ 16.

Plaintiff Williene Jackson-Jones is a California resident who during 2021 purchased Calico Critters on Amazon.com for her granddaughter. *Id.* ¶ 55. Plaintiff alleges that the Calico Critters she purchased "are banned hazardous substances" under the CPSC's small parts rule. *Id.* ¶ 56; *see id.* ¶¶ 20-32. Plaintiff alleges that, "[h]ad [she] known these Calico Critters Flocked Toys were banned hazardous substances, she would not have purchased them." *Id.* ¶ 57.

5

Plaintiff filed this putative class action in California state court, and Defendants removed to federal court. ECF 1. The complaint asserts claims for violations of the "unlawful" and "unfair" prongs of the UCL and for unjust enrichment. ECF 1-1, ¶¶ 78-102. Plaintiff "seek[s] restitution" and "injunctive relief compelling Defendants to (1) recall the Calico Critters Flocked Toys currently in distribution and (2) permanently refrain from selling Calico Critters Flocked Toys in the future that pose a choking, aspiration, or ingestion hazard and are intended for use by children under 3." *Id.* ¶¶ 83-84, 94-95, 101.[1]

## B. Defendants' Motion To Dismiss

Defendants moved to dismiss for failure to state a claim. ECF 15. As Defendants explained, federal law provides that certain "acts and the causing thereof are prohibited," including "[t]he introduction into interstate commerce of any … banned hazardous substance." 15 U.S.C. § 1263(a); *see id.* § 1261(f)(1)(D). The CPSC's small parts rule provides that banned hazardous substances include "[a]ny toy … intended for use by children under 3 years of age which presents a choking, aspiration, or ingestion hazard because of small parts as determined by part 1501." 16 C.F.R. §§ 1500.18(a)(9). Part 1501 in turn sets forth (1) a procedure to determine

---

[1] The complaint names an additional plaintiff and an additional defendant, but they were later dismissed. ECF 71.

whether a toy is or contains a small part and (2) a "scope" provision describing which articles are intended for use by children under three. *See id.* §1501.1.

Defendants explained that Plaintiff's claims are inconsistent with the "scope" provision. That provision includes a nonexclusive list of 19 "articles" that are "intended for use by children under 3," including "stuffed, plush and flocked animals and other figures." *Id.* § 1501.2(a). The provision also provides three "factors" that "are relevant" to "determining which toys and other articles are intended for use by children under 3": "[1] the manufacturer's stated intent (such as on the label) if it is a reasonable one; [2] the advertising, promotion and marketing of the article; and [3] whether the article is commonly recognized as being intended for children under 3." *Id.* §1501.2(b).

Since the CPSC first promulgated the small parts rule in 1979, it has consistently told the toy industry that flocked toys are *not* automatically deemed intended for use by children under three under §1501.2(a), but rather are so intended only as determined by the factors in §1501.2(b). In the rule's preamble, the CPSC stated that its staff were required to "carefully appl[y]" the §1501.2(b) factors "in every case, before initiating any enforcement action." 44 Fed. Reg. 34892, 34898 (June 15, 1979). In 1993, 2002, and 2020, the CPSC issued age-determination guidelines, which refer manufacturers to the §1502.1(b) factors and do not mention any items automatically deemed intended for children under three. ECF 15-1, at 11,

118, 480. Indeed, the CPSC repeatedly indicated that *Calico Critters in particular* are not subject to the small parts rule. *See id.* at 466 ("[T]his type of miniature world play set and flocked animal toys is appropriate for children over three years of age."); *id.* at 468 (Calico Critters model "appears to be appropriately age labeled for children 3+ and nothing further is required on the part of [EEP] at this time"); *id.* at 788 (recalling *only* those Calico Critters "that were sold with bottle and pacifier accessories"); *id.* at 798 (telling parents that Calico Critters "without bottle and pacifier accessories are not recalled and can continue to be used by children ages 3 and above").

Nevertheless, the district court denied Defendants' motion to dismiss. In the court's view, "the plain language of § 1501.2 unambiguously defines flocked animals and figures as undeniably intended for children under three." ECF 43, at 5. Because the court found the small parts rule "unambiguous," it "d[id] not[] consider agency guidance in interpretating the regulation." *Id.* at 5 n.3.

### C. Plaintiff's Motion for Class Certification

Plaintiff then moved to certify a class of "[a]ll persons in the State of California who purchased at least one of [a list of 227 Calico Critters products], for personal use and not for re-sale, since January 30, 2019." ECF 77, at 8. Plaintiff attached a declaration from an economist proposing two alternative methods of calculating the restitution Plaintiff sought. Under the "full refund method,"

Plaintiff's expert opined that restitution "could be calculated with data that the defendants have in their possession." ECF 63-12, ¶ 11. Under the "offset method," Plaintiff's expert opined that he could "calculate the portion of the price due to the offending portion of the subject products" using a "hedonic regression analysis." *Id.* ¶ 13-14.

In opposition, Defendants explained that Plaintiff is an inadequate representative under Rule 23(a)(4) because she lacks Article III standing to seek injunctive relief. Plaintiff's deposition included the following exchange:

```
          You gave them away in some time, you said,
like, the second half of 2022.  Is that right?
     A.  Yes.
     Q.  Since that time, you didn't buy any more
Calico Critters products, right?
     A.  No.
```

```
     Q.  Why not?
     A.  That would have been repeating the same
thing I did before.  I would have been buying them
to throw them away or to give them away.
     Q.  So it's fair to say that you have no desire
to buy any more Calico Critters products, right?
     A.  Not at this time, no.
```

ECF 81-3, at 131:20-132:7. Plaintiff offered no further testimony about the possibility of future purchases.

9

Defendants also explained that Plaintiff had not met Rule 23(b)(3)'s predominance requirement because neither of her expert's restitution models reliably measures her purported injury. The offset method, Defendants explained, is unreliable for myriad reasons detailed in Defendants' expert's rebuttal report. ECF 81-1. And a full refund is unavailable as a matter of law because Plaintiff received some value from the products she bought. Plaintiff "actually liked the product," and her granddaughter "really like the product," which were her granddaughter's "favorite toys." ECF 81-3, at 70:8-16, 76:12-19. Plaintiff received exactly what she paid for—flocked figures with small accessories—and Plaintiff's expert agreed that Plaintiff benefitted and that "the market value of this product is equivalent to its price." ECF 81-4, a, 47:5-11; *see id.* at 20:13-21:1.

But the district court granted class certification under Rule 23(b)(3). As to adequacy, the court held that Plaintiff has standing to seek injunctive relief, reasoning that, "[a]lthough [Plaintiff] does not intend to purchase the Calico Critters toys *while they are still hazardous substances*, she would be interested once more if injunctive relief removed choking dangers." Order 5 (cleaned up). As to predominance, the court approved Plaintiff's full-refund model, reasoning that UCL cases rejecting full refunds are "inapposite, as [Plaintiff] alleges that the Products themselves (distinct from their advertising or representations) are unlawful and unfair because they are banned hazardous substances." *Id.* at 10.

10

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(f) authorizes this Court to "permit an appeal from an order granting or denying class action certification." This Court "enjoy[s] unfettered discretion to grant or deny permission to appeal based on any consideration that the [C]ourt … finds persuasive.'" *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957 (9th Cir. 2005) (quotation marks omitted). While "Rule 23(f) review should be granted sparingly," "interlocutory review [i]s warranted when the district court's decision is manifestly erroneous—even absent a showing of another factor." *Id.* at 959. There is "no reason for a party to endure the costs of litigation when a certification decision is erroneous and inevitably will be overturned." *Id.* To be "truly 'manifest,'" a district court's error "must be significant" and "easily ascertainable from the petition itself." *Id.*

## ARGUMENT

### I.    Plaintiff Is an Inadequate Representative Because She Faces No Imminent Threat of Future Injury

Rule 23(a)(4) provides that a plaintiff may bring a class action only if she "will fairly and adequately protect the interests of the class." To meet this requirement, a named plaintiff "must show standing with respect to each form of relief sought." *Ellis v. Costco Wholesale Grp.*, 657 F.3d 970, 978 (9th Cir. 2011). District courts often deny class certification because the named plaintiff "lacks standing to pursue at least one type of relief sought on behalf of the class." *Tigbao*

11

*v. QBE Fin. Inst. Risk Servs., Inc.*, 2014 WL 5033219, at *1 (C.D. Cal. Sept. 22, 2014); *see, e.g.*, *Beal v. Lifetouch, Inc.*, 2012 WL 3705171, at *3 (C.D. Cal. Aug. 27, 2012).

Here, Plaintiff seeks an injunction but lacks standing to seek it. To establish Article III standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quotation marks omitted). Where plaintiffs "request forward-looking relief," they also "must face a real and immediate threat of repeated injury." *Id.* at 1986 (quotation marks omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citation omitted). But "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). At the class certification stage, plaintiffs must establish standing for all forms of relief sought—and all other prerequisites of Rule 23—"by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

Plaintiff failed to carry that burden. She seeks an injunction recalling certain Calico Critters and prohibiting future sales, but she gave her Calico Critters away years ago and presented no evidence that she intends to buy Calico Critters in the

12

future. To the contrary, her deposition testimony affirmatively disproves any such intent. When asked if she has any "desire to buy any more Calico Critters products," she replied, "Not at this time, no." ECF 81-3, at 132:5-7. She further testified that she has not bought Calico Critters in years because doing so would make no sense. In her own words, "[t]hat would have been repeating the same thing I did before. I would have been buying them to throw them away or to give them away." *Id.* at 131:20-132:4. Plaintiff explained that, in her view, Calico Critters as they currently exist are "unsafe"—"honestly, I don't think they should be sold." *Id.* at 132:20-21, 157:11-15. In light of that testimony, Plaintiff cannot possibly show any "threat of repeated injury." *Murthy*, 144 S. Ct. at 1986 (citation omitted).

Even in cases with stronger indications of future intent, courts have held that plaintiffs lacked Article III standing. The Supreme Court has held that a "profession of an intent ... is simply not enough." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (cleaned up). "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that [Article III] require[s]." *Id.* This Court has held that a "statement that [a plaintiff] would 'consider buying' [the defendant's] products does not satisfy this standard." *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018); *see In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021)

(similar). District courts routinely dismiss claims for injunctive relief where plaintiffs fail to allege an intent to buy the defendant's product. *E.g.*, *Renn v. Otay Lakes Brewery, LLC*, 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024); *Scheibe v. Performance Enhancing Supplements, LLC*, 2023 WL 3829694, at *4 (S.D. Cal. June 5, 2023). Even the district judge in this case previously held that "[w]here … a plaintiff vaguely alleges that he 'may' purchase the product in the future, the Ninth Circuit and district courts have found this some day intention insufficient to satisfy Article III standing." *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021). Where a plaintiff's sworn testimony *disclaims* any present intent to purchase the product, *a fortiori* there is no Article III standing.

In reaching a contrary conclusion, the district court cited no evidence that Plaintiff presently intends to buy Calico Critters. Instead, the court opined that Plaintiff "would be interested once more if injunctive relief removed choking dangers." Order 5 (cleaned up). But that reasoning is mistaken three times over.

First, Plaintiff did *not* testify that she "would be interested" in buying Calico Critters. She testified that, "at this time," she has "no desire to purchase any more Calico Critters products." ECF 81-3, at 132:5-7. Testimony that a consumer has no present desire to buy a product "do[es] not support a finding of the actual or imminent injury that [Article III] requires." *Lujan*, 504 U.S. at 564. In fact, it forecloses any such finding.

14

Second, even if Plaintiff had testified that she "would be interested" in buying Calico Critters at some point, that would not satisfy Article III. That statement is indistinguishable from statements that the Supreme Court, this Court, and the district judge have all previously found insufficient. *See Lujan*, 504 U.S. at 564 ("'some day' intentions"); *Lanovaz*, 726 F. App'x at 591 ("would 'consider buying'"); *Coca-Cola*, 2021 WL 3878654 ("would consider purchasing"); *Rodriguez*, 2021 WL 1985031, at *4 ("'may' purchase").

Third, even if Plaintiff had expressed a definite intention to buy, she *still* faces no risk of future harm. That is because, according to the district court, Plaintiff would consider buying Calico Critters *only if they are modified so that she deems them safe*. Safe products, by definition, would not harm Plaintiff. While Plaintiff might like having the option to buy modified Calico Critters without small parts, "a court cannot impose a mandatory injunction requiring a company to alter its products." *Renn*, 2024 WL 331616, at *8. And when plaintiffs "will consider buying [the product] only if they receive an injunction first," they "lack Article III standing to seek injunctive relief." *Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333, 334 (9th Cir. 2017).

To establish standing based on a threat of repeated injury, plaintiffs must show "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Here, Plaintiff claims that she was

15

harmed by buying Calico Critters as they currently exist and seeks an injunction against selling Calico Critters as they currently exist. ECF 1-1, ¶¶ 55-57, 83-84, 94-95. But Plaintiff believes the products as they currently exist are hazardous substances, and she "*does not intend to purchase the Calico Critter toys* while they are still hazardous substances." Order 5 (emphases added and omitted). Therefore, there is no "sufficient likelihood that [Plaintiff] will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. Her testimony "constructs a situation in which there is no possible threat of actual or immediate harm under any circumstance." *Swearingen v. Late July Snacks LLC*, 2017 WL 4641896, at *4 (N.D. Cal. Oct. 16, 2017).

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), which Plaintiff cited below, is not to the contrary. There, this Court held that "a previously deceived consumer may have standing to seek an injunction against false advertising …, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969. Here, Plaintiff alleges no false advertising. And Plaintiff knows exactly what she will receive if she buys Calico Critters today—flocked figures with small parts. *See Renn*, 2024 WL 331616, at *8 (explaining that *Davidson* does not apply where consumers can "verif[y]" what they are buying). Most importantly, the plaintiff in *Davidson* alleged

that "she would purchase" the product as it then was advertised. 889 F.3d at 971. Here, Plaintiff will *not* buy Calico Critters as they currently are sold.

## II. Common Issues Do Not Predominate Because Plaintiff's Full-Refund Restitution Model Does Not Reliably Measure Her Purported Injury

A court may certify a class under Rule 23(b)(3) only where "the questions of law or fact common to class members predominate over any questions affecting only individual members." To satisfy that requirement, a plaintiff must establish that "damages are susceptible of measurement across the entire class," and "any model supporting [the] plaintiff's damages case must be consistent with [her] liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiffs must show that a damages model "will be able to reliably calculate damages in a manner common to the class at trial." *Lytle v. Nutramax Lab'ys, Inc.*, -- F.4th --, 2024 WL 3915361, at *6 (9th Cir. Aug. 23, 2024). Here, Plaintiff did not make that showing.

To explain, the UCL provides that courts "may make such orders or judgments … as may be necessary to restore to any person in interest any money … which may have been acquired by means of … unfair competition." Cal. Bus. & Prof. Code § 17203. Under that language, the only monetary relief the UCL authorizes is "restitution." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 790 (2015). And "the proper measure of restitution," *id.*, is "[t]he difference between what the plaintiff paid and the value of what the plaintiff received," *Vioxx*, 180 Cal. App. 4th at 131. Accordingly, where plaintiffs "received value from [the product]" and "d[o] not

17

establish any price/value differential," the court "lack[s] discretion to award restitution." *Tobacco Cases II*, 240 Cal. App. 4th at 802. In other words, "a full refund is *unavailable*" under the UCL "when consumers received some benefit." *Id.* at 801-02.

Courts routinely apply these limitations on UCL restitution to deny full refunds. In *Chowning v. Kohl's Department Stores, Inc.*, 733 F. App'x 404 (9th Cir. 2018), this Court affirmed a grant of summary judgment to defendants because the plaintiffs conceded that they benefitted from the products and full refunds are only "available in a UCL case when the plaintiffs prove the product had *no* value to them." *Id.* at 406. Similarly, in *Brazil v. Dole Packaged Foods, LLC*, the Court affirmed a denial of class certification because a UCL plaintiff "cannot be awarded a full refund unless the product she purchased was worthless." 660 F. App'x at 534-35. District courts have repeatedly held that UCL plaintiffs who benefited from a product cannot receive full refunds. *See, e.g.*, *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) (citing additional cases).

The rule denying full refunds to consumers who received a benefit reflects fundamental UCL principles. "A court cannot, under the equitable powers of [the UCL], award whatever form of monetary relief it believes might deter unfair practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Rather, "[t]he UCL balances relaxed liability standards with limits on

18

liability," *Vioxx*, 180 Cal. App. 4th at 130, and UCL restitution is more limited than tort damages, *see Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173-74 (2000). Accordingly, UCL restitution cannot possibly put plaintiffs in a *better* position than they would have occupied had the alleged misconduct never occurred, as that would confer a windfall unavailable even as tort damages. *See* Cal. Civ. Code § 3343. Because UCL restitution is intended only "to restore a victim to wholeness," a UCL plaintiff cannot "retain some … boon, yet obtain the windfall of a full refund." *Tobacco Cases II*, 240 Cal. App. 4th at 795-96 (citations omitted).

Here, the district court found predominance based solely on Plaintiff's full-refund model, requiring Plaintiff to prove that she received no benefit. But Plaintiff presented no evidence to carry that burden. To the contrary, her testimony establishes that she *did* benefit. Calico Critters were Plaintiff's granddaughter's "favorite toys," which she played with "[e]very time" she visited. *Id.* at 70:8-16. As Plaintiff's expert admitted, Plaintiff and her granddaughter "had playtime with [the toys]," which "presumably[] … was enjoyable," and "getting an enjoyable experience is a benefit." ECF 81-4, at 20:13-21:1. That testimony forecloses any notion that Calico Critters are "truly valueless." *Chowning*, 733 F. App'x at 406.

Indeed, Plaintiff did not just receive *some* value; she received *full* value. When Plaintiff bought Calico Critters, she received exactly what she paid for—flocked figures with small parts. Plaintiff's expert agreed that "the market value of

this product is equivalent to its price." ECF 81-4, at 47:5-11; *see id.* at 48:4-10 (similar). Plaintiff's expert also acknowledged that when consumers pay market value and get what they paid for, their "net loss" is "zero," and any monetary award would result in a "windfall." *Id.* at 49:1-5, 50:21-24.

Plaintiff now claims that Calico Critters are banned hazardous substances. But at the time of purchase, Plaintiff knew all the facts that, in her view, make the products subject to the CPSC's small parts rule—*i.e.*, they are flocked figures with small parts. Moreover, Plaintiff's granddaughter was older than three, *see* ECF 81-3, at 16:24-17:8—outside the class of children the rule is designed to protect. Regardless, Plaintiff "obtain[ed] the full value of what was paid for and therefore has given up nothing." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998). She is not entitled to *any* refund, let alone a full refund.

In upholding Plaintiff's full-refund restitution model, the district court acknowledged "cases in which courts rejected a full refund model where plaintiffs had received some value or benefit from misbranded or misrepresented products." Order 10. But the court found those cases "inapposite" because Plaintiff "alleges that the Products themselves (distinct from their advertising or representations) are unlawful and unfair because they are banned hazardous substances." *Id.* For starters, Plaintiff's allegation is wrong—the products are *not* banned hazardous substances because, under the small parts rule, flocked figures are not automatically

deemed intended for children under three. *See* pp. 6-9, *supra*. The products certainly are not hazardous to individuals *over* three, including Plaintiff and her granddaughter.

But even if Plaintiff's allegation were right, the district court supplied no reason that the settled rule barring full refunds when plaintiffs have benefited from the product should not apply to products that are unlawful to sell (but not to buy or possess). The only case the district court cited was *JUUL*. There, another district court certified a full-refund class on the theory that, "because it was illegal or inherently unfair to market and sell the JUUL product to youth, youth purchasers received no value from it at all." 609 F. Supp. 3d at 976. But the *JUUL* court offered no further reasoning, and it relied on a case—*Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal. 2014)—that approved a full refund *not* simply because the product was illegal, but because "it provided none of the advertised benefits." *Id.* at 430. Moreover, *JUUL* was the subject of three Rule 23(f) petitions. While they focused on other issues, this Court *granted* those petitions before the case settled on appeal. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, No. 22-80061, Dkt. 15 (9th Cir. Oct. 24, 2022).

*JUUL* also cited *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010), but that case did not discuss the availability of full refunds. *Id.* at 154-55. Furthermore, it concerned a controlled substance that was illegal not only to sell but

also to possess without a prescription. *Id.* at 149. Here, while the district court held (wrongly) that Calico Critters are unlawful to sell, they are *not* unlawful to buy or possess. *See* 15 U.S.C. § 1263(a).

Beyond citing *JUUL*, the district court did not explain its view that buyers of unlawful products are entitled to full refunds. To the extent the court suggested as a factual matter that Calico Critters lack any value to consumers, that is incorrect. Plaintiff and her granddaughter enjoyed playing with her Calico Critters, and Plaintiff's expert admitted that the products' market value is equal to their price.

To the extent the court suggested that courts as a matter of law will not recognize the value of unlawful products, that is irreconcilable with fundamental UCL principles. Even where business practices are "unlawful," the only monetary relief the UCL authorizes is "restitution," which is intended only "to restore a victim to wholeness." *Tobacco Cases II*, 240 Cal. App. 4th at 789-90, 795 (citation omitted). A full refund here would make Plaintiff far *more* than whole—she would get the benefit of enjoying her Calico Critters for years *and* all her money back. The statute does not support ignoring the benefits consumers receive from *any* product— including products that "violate" federal law, *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *13 (N.D. Cal. Aug. 31, 2018) (citation omitted), and are "unlawful … to … sell," *Shahinian v. Kimberly-Clark Corp.*, 2016 WL 11722907, at *15 (C.D. Cal. Nov. 14, 2016) (citation omitted).

Finally, to the extent the court suggested that full refunds are appropriate as a deterrent measure, California law says otherwise. A "full refund" is "not available … for the exclusive purpose of deterrence." *Id.* at 801. And providing full refunds to consumers who benefitted from the product would amount to impermissible "nonrestitutionary disgorgement." *Id.* at 800 (citation omitted).

### RELIEF SOUGHT

Leave to appeal should be granted.

Dated: September 19, 2024      Respectfully submitted,

ARNOLD & PORTER KAYE
SCHOLER LLP
James F. Speyer
Ian S. Hoffman
William C. Perdue

*/s/ James F. Speyer*
James F. Speyer

*Attorneys for Defendant*
*Epoch Everlasting Play, LLC*

K&L GATES LLP
Robert W. Sparkes, III

*Attorney for Defendant-Petitioner*
*Amazon.com Services LLC*

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1), because this petition contains 5,199 words, calculated in reliance on Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

Dated:  September 19, 2024

Respectfully submitted,

ARNOLD & PORTER KAYE
SCHOLER LLP

*/s/ James F. Speyer*
James F. Speyer

*Attorney for Defendant*
*Epoch Everlasting Play, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2024, I caused the foregoing petition to be filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit via the Court's CM/ECF system. I also caused a copy of the petition to be served via email on the following recipients:

Justin R. Kaufman
Philip Kovnat
DURHAM, PITTARD & SPAULDING, LLP
505 Cerillos Road, suite A209
Santa Fe, NM 87501
jkaufman@dpslawgroup.com
pkovnat@dpslawgroup.com

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
WADE KILPELA SLADE LLP
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
gwade@waykayslay.com
sara@waykayslay .com
marc@waykayslay.com

David F. Slade
WADE KILPELA SLADE LLP
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
slade@waykayslay.com

Jack Waker
MARTIN WALKER
121 North Spring Avenue
Tyler, TX 75701
jwalker@martinwalker.com

Dated:  September 19, 2024

Respectfully submitted,

ARNOLD & PORTER KAYE
SCHOLER LLP

*/s/ James F. Speyer*
James F. Speyer

*Attorneys for Defendant*
*Epoch Everlasting Play, LLC*

# EXHIBIT A

Pursuant to Federal Rule of Appellate Procedure 5(b)(1)(E)

**O**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# United States District Court
# Central District of California

WILLIENE JACKSON-JONES et al.,

        Plaintiff,

   v.

EPOCH EVERLASTING PLAY, LLC et al.,

        Defendants.

Case № 2:23-cv-02567-ODW (SKx)

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION [63]**

## I.    INTRODUCTION

Plaintiff Williene Jackson-Jones brings this putative class action against Defendants Epoch Everlasting Play, LLC and Amazon.com Services LLC (collectively "Defendants"), asserting claims under California's Unfair Competition Law ("UCL") and for unjust enrichment.  (Notice Removal Ex. A ("Compl.") ¶¶ 13, 16, 78–102, ECF No. 1-1.)  Jackson-Jones now moves for class certification under Federal Rule of Civil Procedure ("Rule") 23.  (Mot. Class Certification ("Mot." or "Motion") 3, ECF No. 63 (redacted), ECF No. 77 (sealed, unredacted).)  For the reasons discussed below, the Court **GRANTS** Jackson-Jones's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

This putative class action concerns Defendants' sale of certain Calico Critters flocked toys to the proposed plaintiff class.  (Mot. 3–4; Compl. ¶¶ 17–32.)  Jackson-Jones alleges that certain Calico Critters are "banned hazardous substances" under the Federal Hazardous Substances Act ("FHSA") because they (1) are intended for use by children under the age of three and (2) are or contain a small part.  (Compl. ¶¶ 17–32.)

Jackson-Jones purchased Epoch's Calico Critters flocked toys for her grandchildren on Amazon.  (*Id.* ¶ 55.)  Had Jackson-Jones known that the toys were banned hazardous substances, she would not have purchased them.  (*Id.* ¶ 57.)

Jackson-Jones initiated this putative class action against Epoch and Amazon alleging three causes of action: (1) violations of the "unlawful" prong of the UCL; (2) violations of the "unfair" prong of the UCL; and (3) unjust enrichment.  (Compl. ¶¶ 78–102.)[2]  She seeks restitution and injunctive relief.  (*Id.* ¶¶ 83, 94, 101.)  She bases each cause of action on her underlying allegation that Defendants violated the FHSA by selling banned hazardous substances to the proposed plaintiff class.

Defendants previously moved to dismiss Jackson-Jones's claims on the grounds that Calico Critters are not intended for children under three years old as a matter of law.  (Defs.' Mot. Dismiss 2, ECF No. 15.)  The Court denied Defendants' motion and found that flocked figures, like Defendants' Calico Critters, are undeniably intended for children under three years of age as a matter of law under the FHSA's regulations.  (Order Den. Defs.' Mot. 5, 13, ECF No. 43.)

Jackson-Jones now seeks to certify the following class pursuant to Rule 23(b)(3) or, alternatively, Rule 23(b)(2): "All persons in the State of California who purchased at least one of the Products, for personal use and not for re-sale, since

---

[2] Two Plaintiffs—Jackson-Jones and Karen Santos—filed the operative Complaint against three Defendants—Epoch, Target Corporation, and Amazon.  (*See* Compl. ¶¶ 11–16.)  After Jackson-Jones and Santos filed the instant Motion for Class Certification, the Court dismissed Karen Santos and Target Corporation pursuant to the parties' Stipulation.  (Order Granting Stip., ECF No. 73.)  The Court therefore refers to all allegations and arguments as made by only Jackson-Jones, against only Epoch and Amazon.

January 30, 2019." (Mot. 8.) Jackson-Jones defines "Products"[3] as encompassing "all Calico Critters flocked toys that were sold with a small part," and lists them in Appendix A to the Motion.[4] (Mot. 8–9; *see id.* App. A ("Products List") 1–7, ECF No. 63-1.) The Motion is fully briefed. (*See* Opp'n, ECF No. 81; Reply, ECF No. 82; Sur-resp., ECF No. 88.)

## III.     LEGAL STANDARD

Whether to grant class certification is within the discretion of the court. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "[T]he failure [to meet] any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting that plaintiff bears burden of affirmatively satisfying each element of the Rule 23 analysis).

"Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, and a party may not rest on mere allegations, *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). Rather, plaintiffs must affirmatively establish that Rule 23's criteria are satisfied by a preponderance of the evidence. *Olean*,

---

[3] The Court applies the same definition to the term "Products" throughout this Order.

[4] In a footnote, Defendants assert that Jackson-Jones's Products List "is inaccurate and overbroad" because "it includes dozens of products that do not contain small parts under the Small Parts Rule." (Opp'n 5 n.1.) However, Defendants do not oppose Jackson-Jones's Motion on this basis; rather, they relegate the entire discussion on the issue to two sentences in a single footnote. (*Id.*) Consequently, the Court does not consider this argument. *See Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) (declining to address a footnote argument because "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived").

31 F.4th at 665, *cert. denied sub nom.*, *StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022).

Consequently, a district court must perform a "rigorous analysis" to ensure that the plaintiff has satisfied each of Rule 23's prerequisites. *Dukes*, 564 U.S. at 351; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351. The district court may consider the merits only to the extent that they overlap with the requirements of Rule 23 and "not to determine whether class members could actually prevail on the merits of their claims." *Ellis*, 657 F.3d at 983 n.8; *see Dukes*, 564 U.S. at 350–52. When resolving factual disputes, even in the context of a motion for class certification, district courts must consider "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982.

## IV.    DISCUSSION

Jackson-Jones contends the Court should certify the proposed class action because it meets the four threshold requirements of Rule 23(a) and is eligible for certification under Rule 23(b)(3), or alternatively Rule 23(b)(2). Jackson-Jones also asserts the Court should appoint her counsel as counsel for the putative class ("Class Counsel") pursuant to Rule 23(g).

## A.    Rule 23(a)

Defendants do not dispute that Jackson-Jones has established the first three threshold requirements provided by Rule 23(a)—numerosity, commonality, and typicality. *See Mazza*, 666 F.3d at 588 (listing four Rule 23(a) requirements). The Court agrees and finds these three requirements satisfied.

In contrast, Defendants argue that Jackson-Jones fails to establish Rule 23(a)'s fourth requirement, adequate representation, because Jackson-Jones lacks Article III

standing to seek injunctive relief on behalf of all proposed class members.[5]  (Opp'n 4,
28–30.)   Under Rule 23(a)(4), a plaintiff must demonstrate that "the representative
parties will fairly and adequately protect the interests of the class."   Fed. R. Civ.
P. 23(a)(4).   This means that, in a class action, at least one named plaintiff must have
Article III standing "with respect to each form of relief sought, whether it be
injunctive relief, damages or civil penalties."   *Bates v. United Parcel Serv., Inc.*,
511 F.3d 974, 985 (9th Cir. 2007).   For injunctive relief, the named plaintiff must
demonstrate that she "has suffered or is threatened with a 'concrete and particularized'
legal harm . . . coupled with 'a sufficient likelihood that [s]he will again be wronged
in a similar way.'"  *Id.* at 985 (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560
(1992); and then citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)).   A
plaintiff may satisfy the second part of this inquiry by establishing a "real and
immediate threat of repeated injury."  *Id.*   "The claimed threat of injury must be likely
to be redressed by the prospective injunctive relief."  *Id.*

Defendants argue that Jackson-Jones lacks standing because "she has no
intention of purchasing the products again," which Defendants urge means she has no
likelihood of repeated injury.  (Opp'n 26.)  Defendants are mistaken.  To the contrary,
Jackson-Jones testified that her grandchild asked her for more Calico Critters, but she
declined to purchase them because she believes the toys are unsafe in their current
form.  (Decl. Gillian L. Wade ISO Reply Ex. A ("Jackson-Jones Dep.") 74:24–75:19,
127:19–23, 132:5–7, ECF No. 82-2.)   Although Jackson-Jones does not intend to
purchase the Calico Critters toys *while they are still hazardous substances*, she would
be interested once more if "[i]njunctive relief . . . removed choking dangers."

---

[5] The issue of a class plaintiff's standing to seek injunctive relief is generally a threshold issue,
distinct from the plaintiff's adequate representation under Rule 23(a)(4).  *See, e.g., Ellis*, 657 F.3d
at 979, 985–86 (analyzing standing to seek injunctive relief separately, but also as an issue bearing
on adequate representation); *Aldapa v. Fowler Packing Co., Inc*., 323 F.R.D. 316, 328–31 (E.D. Cal.
2018) (analyzing standing to seek injunctive relief separately from analyzing Rule 23(a)'s
requirements).  However, because Defendants raise this argument in Opposition as a Rule 23(a)(4)
issue, the Court will likewise address Jackson-Jones's standing within its discussion of
Rule 23(a)(4).

(Reply 3–4; *see* Jackson-Jones Dep. 132:7.)   Thus, Jackson-Jones demonstrates a sufficient likelihood of repeated injury for Article III standing in this action and is an adequate representative under Rule 23(a)(4).

**B.   Rule 23(b)(3)**

Jackson-Jones asks the Court to certify the class under Rule 23(b)(3).  To do so, a court must find: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

*1.   Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "It 'presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2),' and focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).  "If so, 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'"  *Id.*

An "assessment of predominance begins, of course, with the elements of the underlying cause of action."  *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (internal quotation marks omitted).  Thus, the Court's inquiry depends on the nature of the underlying causes of action—unfair and unlawful competition, and unjust enrichment.

Jackson-Jones alleges that Defendants sold banned hazardous substances to the proposed class, unfairly and unjustly benefiting from those unlawful sales.  This allegation is at the heart of each of cause of action that Jackson-Jones raises.  Thus, the question of whether the Products are indeed banned hazardous substances is

central and common to all proposed class members' claims.  To resolve this common question, the Court must determine "whether the Products are intended for children under 3, pursuant to 16 C.F.R. § 1501.2; and whether the Products contain small parts pursuant to 16 C.F.R. § 1501.4."  (*See* Mot. 16.)  As the Court has already answered the first question in the affirmative, (*see* Order Den. Defs.' Mot 5, 13), all that remains is whether the Products contain small parts under the regulations.  Common evidence regarding the Products themselves will provide common answers to this question. These common questions, answers, and evidence present a central and significant aspect of the case.  Because "they can be resolved for all members of the class in a single adjudication, . . . there is clear justification for handling the dispute on a representative rather than on an individual basis."  *In re Hyundai*, 926 F.3d at 557. Accordingly, the Court finds Jackson-Jones meets the predominance requirement.

Nevertheless, Defendants argue Jackson-Jones cannot satisfy the predominance requirement because (a) she cannot prove causation on a classwide basis, as required for her UCL claims, and (b) she cannot calculate restitution damages on a classwide basis.  (Opp'n 13–25.)  Defendants contend these are individual issues that outweigh the common issues and defeat predominance.  (*Id.*)

### a.    UCL—Causation

Defendants argue Rule 23(b)(3) class certification is improper because Jackson-Jones cannot prove causation, a requirement for her UCL claim, for all unnamed class members.  (Opp'n 6, 23–25.)  However, the Court is not persuaded that Jackson-Jones needs to establish causation on a classwide basis.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Before 2004, private parties could assert UCL claims without alleging they suffered any injury as a result of the defendant's challenged conduct.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 305 (2009) ("*Tobacco II*").  Proposition 64, which became effective in 2004, changed this by adding a standing requirement for a private party

plaintiff asserting a claim under the UCL: she must demonstrate she "lost money or property" (i.e., demonstrate some form of economic injury) "as a result of the unfair competition." *See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011) ("[P]rivate standing is limited to any person who has suffered injury in fact and has lost money or property as a result of unfair competition." (internal quotation marks omitted)). Shortly thereafter, the California Supreme Court held in *Tobacco II* that this causation requirement for establishing private party standing does not apply to unnamed class members; rather, only the named plaintiff needs to establish causation. *See Tobacco II*, 46 Cal. 4th at 324; *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("[T]he standing provision added by Proposition 64 'was not intended to have any effect at all on unnamed members of UCL class actions.'" (quoting *Tobacco II*, 46 Cal. 4th at 321)). The California Supreme Court reasoned in part that the UCL's focus is "the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Tobacco II,* 46 Cal. 4th at 312.

This Court joins the courts in the Ninth Circuit that have applied the reasoned analysis of *Tobacco II* to UCL class actions in federal court, thereby "reliev[ing] UCL plaintiffs of their obligation to establish absent class members'" injury resulting from defendant's challenged acts." *Walker*, 953 F.3d at 630 ("We have repeatedly relied on *Tobacco II* in recognizing what amounts to a conclusive presumption of reliance in UCL cases." (internal quotation marks omitted)); *see, e.g.*, *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (applying *Tobacco II* and certifying a class action alleging UCL violations without requiring classwide proof that defendant's misstatements caused class members' injury).

Regardless, even if the holding of *Tobacco II* were limited to UCL class actions in state court, Jackson-Jones would still not need to prove classwide causation in this case. Like she argues, an objective reasonable consumer would find whether the

Products are a "banned hazardous substance" to be a material factor when deciding whether to purchase the toys.  Therefore, because common sense suggests that class members would not have knowingly purchased illegal products, Jackson-Jones need not establish causation for unnamed class members.  *See In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 555 (S.D. Cal. 2017) (holding that plaintiffs did not need to prove causation and reliance on a classwide basis because "common sense" suggested they would not have purchased the bird food had they known it was actually bird poison); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157 (finding that a reasonable person would find it material that a product was illegal to sell without a prescription, based on the "assum[ption] that a reasonable person would not knowingly commit a criminal act").

Thus, Defendants' challenge to predominance on this basis fails.

### b.    Damages Models

Defendants also argue that Jackson-Jones cannot meet the Rule 23(b)(3) predominance requirement because neither of her proposed restitution models can reliably measure monetary relief on a classwide basis.  (Opp'n 13–23.)

In *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), the United States Supreme Court held that, as part of the predominance inquiry under Rule 23(b)(3), plaintiffs must establish that "damages are capable of measurement on a classwide basis."  Although the Court noted that "[c]alculations need not be exact," plaintiffs must present a damages model consistent with their theory of liability (i.e., a damages model measuring "only those damages attributable to that theory").  *Id.* at 35.

Jackson-Jones offers two models that she contends are capable of measuring restitution on a classwide basis: (1) the "Full Refund Method" model, which would refund "the entirety of the price paid by consumers for the subject products," and (2) the "Offset Method" model, which would refund "the portion of price attributable to the offending portion of the subject products."  (Mot. 7.)

Defendants argue Jackson-Jones's Full Refund model is inappropriate because she derived some benefit from the Products, and thus a full refund would confer on her a windfall. (Opp'n 15.) In support of this argument Defendants rely on cases in which courts rejected a full refund model where plaintiffs had received some value or benefit from misbranded or misrepresented products. (*Id.* at 16.) These cases are inapposite, as Jackson-Jones alleges that the Products themselves (distinct from their advertising or representations) are unlawful and unfair because they are banned hazardous substances. (*See* Reply 10–12.) When a party sells products to consumers that are "inherently unfair or illegal," a full refund damages model is appropriate. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022) (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157) (approving plaintiffs' damages theory that, "because it was illegal or inherently unfair to market and sell the JUUL product to youth, youth purchasers received no value from it at all"). Here, because Jackson-Jones alleges that Defendants sold banned hazardous substances in violation of the FHSA, Jackson-Jones's Full Refund model is appropriate for measuring damages in a way that is consistent with her theory of liability, and supports certification. *See Comcast*, 569 U.S. at 34–35.

As such, the Court declines to reach Defendants' arguments against Jackson-Jones's alternative Offset Method damages model and finds that Defendants' challenge to predominance on this basis also fails.

   2.   *Superiority*

To certify a class under Rule 23(b)(3), in addition to finding predominance, a court must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A class action may be superior if "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency" and "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996).

1    Jackson-Jones maintains that, because the restitution amounts sought on behalf

2  of each class member are too small for the class members to file individual claims, a

3  class action is the only reasonable vehicle for litigating the class claims.  (Mot. 20.)

4  She is "not aware of any other class actions currently pending against Defendants

5  regarding the Products on behalf of any segment of the class," and contends a class

6  action "will prevent inconsistent adjudications and promote fair and efficient use of

7  the judicial system."  (*Id*. at 21.)  Thus, she argues, proceeding as a class action is

8  superior.

9    Defendants do not oppose the issue of superiority.  (*See generally* Opp'n.)  The

10  Court views this failure to oppose as a concession.  *See, e.g.*, *Gordian Med., Inc. v.*

11  *Percival*,  No. 8:19-cv-02244-JVS  (ADSx),  2020 WL  5921947,  at *10  (C.D. Cal.

12  Aug. 27, 2020) (construing a party's failure to oppose an argument as a concession).

13  Further, the Court finds that addressing the common issues on a classwide basis will

14  be more efficient than individual legal actions, and the costs of individual actions are

15  high compared to the potential recovery for each class member, making individual

16  actions undesirable.  The Court therefore finds a class action is superior to other

17  potential methods of adjudication.

18    In summary, the Court finds that the proposed class satisfies the four

19  requirements of Rule 23(a), the common issues will predominate over individualized

20  issues, and a class action will be superior to alternative methods of adjudication.

21  Accordingly, the proposed class may be certified under Rule 23(b)(3), and the Court

22  need not address Jackson-Jones's alternative argument for certification under

23  Rule 23(b)(2).

24  **C.    Rule 23(g)—Class Counsel**

25    Lastly, Jackson-Jones requests that the Court appoint her counsel as Class

26  Counsel.  (Mot. 14–15.)  Defendants do not oppose appointment of Jackson-Jones's

27  counsel, and therefore concede the issue.  (*See generally* Opp'n.)

28

Under Rule 23(g)(2), "a court that certifies a class must appoint class counsel." "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." Rule 23(g)(1)(A) sets out four factors the court must consider: (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Rule 23(g)(4) requires that class counsel "fairly and adequately represent the interests of the class." The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, nothing suggests that Jackson-Jones's counsel has any interests antagonistic to the class, and the record in this case reflects counsel's vigorous and skillful prosecution. Further, counsel sufficiently establishes their undisputed significant experience in handling consumer class action. (*See* Decl. Gillian L. Wade ISO Mot. ¶¶ 1–23, ECF No. 63-2.) Accordingly, the Court appoints Jackson-Jones's counsel as Class Counsel. In light of counsel's recent change of firm affiliation, (ECF No. 90), which occurred after the Court took the Motion under submission, Jackson-Jones shall submit to the Court a Proposed Order Appointing Class Counsel, listing her counsel and their current firm affiliations. Only those attorneys whose experience and credentials are adequately supported in the Motion and supporting documents may be listed.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Jackson-Jones's Motion for Class Certification. (ECF No. 63.)

Accordingly, the Court **CERTIFIES** the following class under Federal Rule of Civil Procedure 23(b)(3) on all causes of action set forth in Jackson-Jones's Complaint: "All persons in the State of California who purchased at least one of the

Products, for personal use and not for re-sale, since January 30, 2019." The term "Products" in the class definition means all Calico Critters flocked toys that were sold with a small part. A list of the Calico Critters toys at issue **is attached to this Order as Appendix A**. Excluded from the class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and directors; and the judicial officers and their immediate family and associated staff assigned to this case.

The Court **ORDERS** Jackson-Jones to lodge with the Court a Proposed Order Appointing Class Counsel as described above **within seven (7) calendar days** of the date of this Order.

**IT IS SO ORDERED.**

September 5, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

## PLAINTIFF'S APPENDIX A

| Item Number and Product Description |
|:---|
| CC1406 Striped Cat Family |
| CC1407 Sandy Cat Twins |
| CC1455 Koala Family |
| CC1460 Kangaroo Family |
| CC1472 Tuxedo Cat Family |
| CC1480 Walnut Squirrel Family |
| CC1481 Hazelnut Chipmunk Twins |
| CC1482 Baby Friends Triplets Plush |
| CC1484 School Friends Set |
| CC1485 School Music Set |
| CC1486 School Lunch Set |
| CC1489 Mango Monkey Family |
| CC1492 Red Panda Family |
| CC1507 Wilder Panda Family |
| CC1509 Bear Family |
| CC1567 Chocolate Rabbit Grandparents |
| CC1571 Ellwoods Elephant Twins |
| CC1642 Hopscotch Rabbit Family |
| CC1643 Chocolate Rabbit Twin |
| CC1693 Silk Cat Family |
| CC1735 Toy Poodle Family |
| CC1737 Toy Poodle Twins |
| CC1791 Baby Tree House |
| CC1792 Baby Castle Playground |
| CC1793 Baby Choo Choo Train |
| CC1794 Maple Cat Family |
| CC1795 Maple Cat Twins |
| CC1799 Baby Ferris Wheel |
| CC1800 Baby Airplane Ride |
| CC1802 Marshmallow Mouse Family |
| CC1803 Woolly Alpaca Family |
| CC1804 Splashy Otter Family |
| CC1806 Marshmallow Mouse Triplets |
| CC1832 Baby Shopping Series |
| CC1840 Nursery Friends Set |

| **Item Number and Product Description** |
|---|
| CC1843 Sweet Raspberry Home |
| CC1845 Baby Party Series |
| CC1865 Persian Cat Family |
| CC1866 Persian Cat Twins |
| CC1867 Persian Cat Triplets |
| CC1873 Baby Camping Series |
| CC1880 Caramel Dog Family |
| CC1882 Playful Starter Furniture Set |
| CC1884 Lakeside Lodge Gift Set |
| CC1886 Adventure Tree House Gift Set |
| CC1887 Baby Ropeway Park |
| CC1888 Baby Hedgehog Hideout |
| CC1890 Baby Outdoor Series |
| CC1900 Baby Windmill Park |
| CC1902 Baby Balloon Playhouse |
| CC1906 Triplets Care Set |
| CC1907 Baby Costume Series |
| CC1911 Hoppin' Easter Set |
| CC1915 Baby Amusement Park |
| CC1916 Baby Star Carousel |
| CC1917 Spooky Surprise House |
| CC1918 Royal Carriage Set |
| CC1919 Baby Magical Party Series |
| CC1923 Hedgehog Family |
| CC1924 Hedgehog Twns |
| CC1939 Midnight Cat Family |
| CC1940 Pookie Panda Family |
| CC1967 Sheep Family |
| CC1968 Sheep Twins |
| CC1969 Goat Family |
| CC1971 Pony's Stylish Hair Salon |
| CC1972 Pony's Hair Stylist Set |
| CC1973 Princess Dress Up Set |
| CC1974 pony friends set |
| CC1975 Party Time Playset Tuxedo Cat Girl |

| **Item Number and Product Description** |
| --- |
| CC1976 Husky Family |
| CC1977 Highbranch Giraffe Family |
| CC1978 Tandem Cycling Set |
| CC1979 Husky Twins |
| CC1980 BBQ Picnic Set Elephant Girl |
| CC1981 Cycle and Skate Set Panda Girl |
| CC1983 Weekend Travel Set Snow Rabbit Mother |
| CC1984 Baby Treats Series |
| CC2018 Yellow Labrador Family |
| CC2019 Yellow Labrador Twins |
| CC2024 Baby Fun Hair Series |
| CC2026 Popcorn Delivery Trike |
| CC2027 Trick or Treat Parade |
| CC2028 Chocolate Rabbit Family |
| CC2029 Red Roof Cozy Cottage |
| CC2053 Baby's Toy Box Snow Rabbit & Panda Babies |
| CC2058 Reindeer Family |
| CC2060 Reindeer Twins |
| CC2061 Easter Celebration Set |
| CC2062 Penguin Family |
| CC2063 Penguin Babies Ride N Play |
| CC2067 Adventure Treehouse Gift |
| CC2069 Fennec Fox Family |
| CC2070 Fennec Fox Twins |
| CC2071 Sunny Picnic Set Fennec Fox Sister & Baby |
| CC2072 Baby Fairy Tale Series |
| CC2073 Baby Mermaid Castle |
| CC2074 Floating Cloud Rainbow Train |
| CC2075 Milk Rabbit Family |
| CC2076 Triplets Baby Bath Time |
| CC2077 Royal Princess Set |
| CC2078 Pony's Vanity Dresser Set |
| CC2080 Village Doctor Starter Set |
| CC2081 Happy Christmas Friends |
| CC2082 Baby Seashore Friends Set |

| **Item Number and Product Description** |
| --- |
| CC2083 Red Roof Country Home Gift Set-Secret Attic Playroom |
| CC2099 Chocolate Rabbit Twin |
| CC2105 Hedgehog Twins |
| CC2131 Yellow Labrador Twins |
| CC2144 Toy Poodle Twins |
| CC2149 Sophie's Love N Care |
| CC2488 Connor and Kerri's New Carriage Ride |
| CC2537 Sophie's Love N Care |
| CC2625 Patty N Paden Double Stroller |
| CC2771 Apple and Jake Ride N Play |
| CC3011 Grand Department Store Gift Set |
| CC3013 Designer Studio |
| CC3022 Dress Up Duo Set |
| CC3023 Violin Concert Set |
| CC3025 Grand Piano Concert Set |
| CC3026 Town Girl Stella Hopscotch |
| CC3027 Town Girl Lulu Silk Cat |
| CC3028 Town Girl Laura Toy Poodle |
| CC3036 Cute Couple Set |
| CC3038 Town Girl Series Marshmallow Mouse |
| CC3042 Elegant Town Manor Gift Set |
| CC3048 Fashion Boutique |
| CC3049 Fashion Play Set Persian Cat |
| CC3050 Fashion Play Set Tuxedo Cat |
| CC3051 Fashion Play Set Sugar Sweet Collection |
| CC3052 Fashion Play Set Shoe Collection |
| CC3053 Fashion Play Set Jewels Gems Collection |
| CC4001 Nursery Chocolate Rabbit Baby Key Chain |
| CC4002 Baby Trio Mascot |
| CC4003 Baby Trio Fruits |
| CC4004 Baby Bride and Groom |
| CC4006 Snuggly Sloth Family |
| CC4007 Mole Family |
| CC4008 Raincoat Babies |
| CC4013 Baby Duo Flowery Garden Friends |

| **Item Number and Product Description** |
|---|
| CC4015 Colorful Baby Unicorn |
| CC4016 Shiba Dog Family |
| CC4021 Handsome Brothers Set |
| CC4022 Winter Carolers |
| CC4023 French Bulldog Family |
| CC4024 Ice Castle Amusement Park |
| CC4500 Calico Husky Family Pack |
| CF1564 Seaside Cruiser |
| CF1825 Hillcrest Home Gift Set |
| CF1842 Red Roof Tower Home |
| CF1872 Red Roof Grand Mansion Gift Set |
| CF1905 Sky Blue Terrace Gift Set |
| CF1920 Mr. Lion's Winter Sleigh |
| CF1930 Trick or Treat Trio |
| CF1945 Log Cabin Gift Set |
| CF3024 Cello Concert Set |
| 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 Calico Critters Persian Cat Fashion Playset |
| 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 Calico Critters Wilder Panda Twins |
| 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 Calico Critters Hopscotch Grandparents |
| 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 Calico Critters Fluffy Hamster Twins |
| 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 Calico Critters Ellwoods Elephant Family |
| 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 Calico Critters Sweetpea Rabbit Family Playset |
| 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 Gingerbread Playhouse |
| 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 Halloween Playhouse |
| 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 Flower Gifts Playset |
| B00004U322 Calico Critters Beagle Dog Twins |
| B000096M5G Calico Tanner & Tallulah's Nursery Fun Time Sleep N |
| B000096M5L Calico Critters: Dalmatian Dog Twins |
| B00009VE0D Calico Critters Carry and Play House |
| B000227NAG Calico Critters Camryn's Country Boutique |
| B000227NAQ Calico Critters Fisher Cat Family |
| B0007ORYA8 Calico Critters Pigglywink Pig Family |
| B0007ORYBC Calico Critters Deluxe Baby's Nursery Set |
| B0007ORYC6 Calico Critters Margaret and Halley's Dress Shop |
| B000F4I30U Calico Critters in Mini Carrying Case |

| **Item Number and Product Description** |
| :--- |
| B001P8H3II Calico Critters Britney Bunny Ballet Recital |
| B001P8TMMI Calico Critters Furbanks Squirrel Twins |
| B002QB7WPW Calico Critters Caramel Cat Twins |
| B002QBDISW Calico Critters Sugar Bear Twins |
| B0045WTDAC Calico Critters Seaside Camping Set |
| B005OZZEI4 Calico Critters Buckley Deer Family |
| B005P04FVK Calico Critters Tuxedo Cat Triplets |
| B009AWBLDO Calico Critters Melissa and Melody Bath Time Set |
| B009AWEAZU Calico Critters Chocolate Labrador Triplets |
| B009AWRJL2 Calico Critters Chihuahua Twins Set |
| B009XJTQ7M Calico Critters Luxury Townhome Gift Set |
| B087DWS19D Calico Critters Border Collie Family Set |
| B00AMEILGE Calico Critters Border Collie Twins Set |
| B00E4LJC6O Calico Critters Outdoor Sports Fun |
| B00ENQ1Z4M Calico Critters Winter Sports Fun Playset |
| B00HEYGR4S Calico Critters Woodbrook Beaver Family Playset |
| B00KE2C8DQ Calico Critters Lakeside Lodge Gift Set |
| B00NY64BYSCalico Critters Country Nurse Set Playset |
| B00NY6F4MQ Calico Critters Cuddle Bear Family |
| CC1454 Calico Critters Chocolate Labrador Family Doll Set |
| B00NY6OU76 Calico Critters Country Dentist Set Playset |
| B00NY6TPXA Calico Critters Cuddle Bear Twins Doll |
| B00NY6YGPM Calico Critters Country Doctor Playset |
| B0102AC69K Calico Critters Fluffy Hamster Family |
| B01AO2LCXW Calico Critters Seaside Ice Cream Shop |
| B01AYEY354 Calico Critters Seaside Treasure Set |
| B01KIGDW64 Calico Critters Ice Skating Friends |
| B01KIGHOLI Calico Critters Ballerina Friends |
| B01L7F9MJG Calico Critters Ballet Theater |
| B01L7FC9B4 Calico Critters Doughnut Store |
| B01L7FEEEE Calico Critters Dressing Area Set |
| B01L8VY320 Calico Critters Pizza Delivery Set |
| B01L8VY32U Calico Critters Brick Oven Bakery |
| B071HWHGZ9 Calico Critters Cake Decorating Set |
| B071VTPH1V Calico Critters Village Cake Shop |

| **Item Number and Product Description** |
|---|
| B07Q4R9R7Q Calico Critters Town Girl Series - Miranda Maple Cat |
| B087DSKJ8M Calico Critters Baby Celebration Marching Band Set |
| B087DXGL5P Calico Critters Marguerite Rabbit Family Dolls |
| B087F168HC Calico Critters Sea Breeze Rabbit Family Dolls |
| B087F5XRZV Calico Critters Deluxe Celebration Home Premium Set (Amazon Exclusive) |
| B08TTQ7546 Calico Critters Darling Ducklings Baby Carriage |
| B08V4KW6GF Calico Critters Fairytale Friends |
| B08V4P55J3 Calico Critters Veggie Babies |
| B08V4YWX9D Calico Critters Costume Cuties - Bunny & Puppy |
| B08V51L8B3 Calico Critters Costume Cuties - Kitty & Cub |
| B08V56XD35 Calico Critters Costume Cuties - Bunny & Birdie |
| B08V57HL71 Calico Critters Ice Cream Cuties |
| B08VM2877X Calico Critters Baby Ninja Trio |
| B08VM5M156 Calico Critters Meerkat Family |
| B08VM9Q1TP Calico Critters Friesian Cow Family |
| B09S1FC8HF Calico Critters Country Tree School Gift Set |
| B09S1FCNSF Calico Critters Large House with Carport Gift Set |